IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MICHAEL SHAWN BROWN,**

**Plaintiff,**

**v.**                                                    **CIVIL ACTION NO.: 3:22-CV-124
(GROH)**

**UNITED STATES OF AMERICA,**

**Defendant.**

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On July 21, 2022, the *pro se* Plaintiff, who is a federal prisoner incarcerated at FCI Gilmer, in Glenville, West Virginia, initiated this case by filing a complaint with the Clerk. ECF No. 1.[1] Plaintiff claims he is entitled to damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, for acts which allegedly occurred while Plaintiff has been incarcerated at FCI Gilmer in the Northern District of West Virginia, and while Plaintiff was previously incarcerated at FCI Williamsburg in Salters, South Carolina. Id. Plaintiff paid the full filing fee on July 27, 2022. ECF No. 5.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed with prejudice as to claims alleged to have occurred at FCI Williamsburg, and

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:22-CV-124, unless otherwise noted.

without prejudice as to all other claims.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Claims in the Complaint

The complaint alleges that on or about May 11, 2020, the Bureau of Prisons ("BOP") enacted its BOP Guidance ("the Guidance") on Aerosol Generating Procedures ("AGPs").[2] ECF No. 1 at 6. Thereafter, on or about August 12, 2020, Plaintiff arrived at FCI Williamsburg, and found that BOP staff did not fully implement the BOP Guidance on AGPs until February 10, 2021. Id. at 13. Plaintiff contends that the delay in implementation was knowing and intentional by BOP employees, constituted outrageous conduct and negligence, and inflicted mental suffering and physical injury on Plaintiff. Id. Further, Plaintiff asserts that approximately two weeks before February 10, 2021,[3] when FCI Williamsburg fully implemented the Guidance on AGPs, he contracted COVID-19. Id. at 14. As a result, Plaintiff contends that his symptoms included cough, shortness of breath, extreme fatigue, body aches and pain, loss of taste and smell, brain fog, loss of memory, sore throat, and night sweats. Id. According to Plaintiff, he was transported by ambulance to a hospital where he was admitted and remained for five days. Id. Plaintiff contends that with Remdesivir antiviral therapy and steroid application, his condition improved. Id. Thereafter, Plaintiff contends he experienced long-COVID symptoms. Id. at 15.

Plaintiff alleges that on or about August 19, 2021, he was transferred from FCI

---

[2] See https://www.bop.gov/foia/docs//COVIDAerosolGuidanceMay8.pdf, "BOP Guidance of Aerosol Generating Procedures (AGPs)" dated May 8, 2020, and revised on May 11, 2020. The May 11, 2020, version bears the notation "Version 1.1" in the lower left corner of each page.

[3] Although Plaintiff alleges that he "began to suffer . . . symptoms characteristics of COVID-19" approximately two weeks prior to February 10, 2021 [ECF No. 1 at 14], medical records submitted by Defendant confirm that Plaintiff first tested positive for COVID-19 on February 18, 2021. ECF Nos. 20 at 94, 193 – 94; 20-1 at 57 – 82.

Williamsburg to FCI Gilmer. Id. Upon being transferred to FCI Gilmer, Plaintiff contends that his assigned cellmate used a vented CPAP machine, which violated the Guidance on AGPs. Id. Further, Plaintiff alleges that FCI Gilmer failed to implement any of the Guidance on AGPs throughout the COVID-19 pandemic. ECF No. 1 at 15 – 16.

Plaintiff contends that his cellmate's medical condition and vented CPAP machine, combined with the failure to fully implement the BOP Guidance on AGPs, and Plaintiff's own underlying medical conditions, put him at extreme risk of severe illness or death from COVID-19. Id. at 17. Further, Plaintiff alleges that the BOP's failure to implement the Guidance on AGPs was done knowingly, willfully, intentionally, and in bad faith, and thus constituted outrageous conduct and negligence. Id.

As a result of BOP actions Plaintiff alleges that he suffered the following[4] injuries: (1) COVID-19 related pneumonia; (2) strep throat; (3) dehydration; (4) "was placed on high risk for deterioration and respiratory failure given his diabetes and morbid obesity"; (5) long-COVID chronic fatigue; (6) brain fog; (7) shortness of breath; (8) asthma; (9) coughing; (10) memory loss; (11) joint and muscle pain; (12) inability to sleep; (13) "severe and acute mental suffering"; (14) "severe emotional and spiritual trauma"; (15) anxiety; (16) psychological distress; (17) psychosocial distress; (18) "marital and family stress and trauma"; (19) worsening PTSD; (20) severe depression; (21) physical pain; (22) discomfort; (23) emotional pain; (24) hypertension (high blood pressure); (25) panic attacks; (26) night sweats; (27) tel[o]moric erosion[5] due to stress; (28) shorter lifespan;

---

[4] Plaintiff further lists a number of other medical conditions which he claims to have, but does not assert those conditions were caused, or exacerbated, by the actions of the Government's agents. ECF No. 1 at 12. Those conditions include hypothyroidism, hyperlipidemia, astigmatism, refractive amblyopia, myrosis [sic], and prurigo. Id.

[5] "Patients with severe COVID-19 disease have significantly shorter telomeres, according to a study conducted by researchers at the Spanish National Cancer Research Centre (CNIO) in collaboration

(29) drooling; (30) dizziness; (31) nausea; (32) headaches; (33) morbid obesity; (34) loss of hair; (35) skin conditions; (36) erectile dysfunction; (37) emotional numbness; (38) nightmares; (39) "night horror dreams and sweats"; (40) loss of smell and taste; and (41) self-harming behavior due to stress and anxiety including digging into skin. ECF No. 1 at 9, 18. Plaintiff seeks $20,000,000.00 in compensatory damages. Id. at 9.

### B.    Motion to Dismiss for Lack of Jurisdiction

Defendant filed a motion to dismiss, accompanied by exhibits in support thereof, on September 29, 2022. ECF Nos. 15, 15-1 through 15-5, 20, 20-1.[6] Defendant asserts four arguments in the motion to dismiss, that: (1) the discretionary function exception precludes subject matter jurisdiction; (2) the government has not waived sovereign immunity as it relates to actions taken during a quarantine; (3) Plaintiff's claims of medical negligence are meritless; and (4) this Court is an improper venue for any claims about FCI Williamsburg. ECF No. 15.

More specifically, Defendant argues that Plaintiff's complaint should be dismissed because the discretionary function exception to the FTCA, codified at 28 U.S.C. 2680(a), shields Defendant from liability. ECF No. 15 at 4. Defendant cites to the two-part test

---

with the COVID-IFEMA Field Hospital, published in the journal *Aging*. The study, led by Maria A. Blasco and whose first authors are Raúl Sánchez and Ana Guío-Carrión, postulates that telomere shortening as a consequence of the viral infection impedes tissue regeneration and that this is why a significant number of patients suffer prolonged sequelae."
https://www.sciencedaily.com/releases/2021/01/210111115738.htm

See Jiang L, Tang BS, Guo JF, Li JC. "Telomere Length and COVID-19 Outcomes: A Two-Sample Bidirectional Mendelian Randomization Study." Front Genet. 2022 May 23;13:805903. doi: 10.3389/fgene.2022.805903.    PMID:    35677559;    PMCID:    PMC9168682. https://pubmed.ncbi.nlm.nih.gov/35677559/; and Grahame TJ, Schlesinger RB. Oxidative stress-induced telomeric erosion as a mechanism underlying airborne particulate matter-related cardiovascular disease. Part Fibre Toxicol. 2012 Jun 19;9:21. doi: 10.1186/1743-8977-9-21. PMID: 22713210; PMCID: PMC3464961. https://pubmed.ncbi.nlm.nih.gov/22713210/

[6] Attachments 20 and 20-1, consisting of 574 pages of Plaintiff's medical records, were filed under seal.

articulated in <u>Rich v. United States</u>, 811 F.3d 140, 144 (4th Cir. 2015) to support its argument. ECF No. 15 at 5. <u>Rich</u> held that:

> To determine whether conduct qualifies for the discretionary function exception, courts apply a two-pronged test. First, a court considers whether the challenged governmental conduct involves an element of judgment or choice. When a statute, regulation, or policy prescribes a specific course of action, there is no discretion and the exception does not apply. Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public                                                                 policy.

811 F.3d 144. Defendant contends that no federal statute, regulation, or protocol specifically described a course of action for Bureau of Prisons employees to follow in relation to COVID-19 protocols. Defendant concedes that Plaintiff refers to "guidance", which Defendant identifies as the CDC interim guidance specifically for detention facilities, issued March 23, 2020. ECF No. 15 at 6, n. 2. Defendant asserts that "[b]y its own language, it is not a mandatory directive to BOP." <u>Id.</u> Accordingly, because there was no specific directive, the conduct of employees involved the exercise of judgment, or choice, and thus the first prong of <u>Rich</u> is met.

Defendant further argues that under Supreme Court precedent, the BOP's response to COVID-19 was a "multi-factored decision that required significant policy analysis," and " '[p]rison administrators … should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " ECF No. 15 at 7, quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321-22 (1986). Defendant maintains that the "BOP's decision regarding how to administer its prisons during the COVID-19 pandemic

is one inherently grounded in decisions of public policy." ECF No. 15 at 9. Accordingly, Defendant argues that the second prong of <u>Rich</u> is met, meaning that the discretionary function exception applies to Plaintiff's claim precluding subject matter jurisdiction, and Plaintiff's complaint should be dismissed. <u>Id.</u>

Further, Defendant argues that the Government's sovereign immunity protects it from Plaintiff's claims, specifically based on 28 U.S.C. § 2680. <u>Id.</u> at 9. Finally, Defendant argues that Plaintiff's claims of medical negligence are without merit because there are "[n]o facts or evidence supporting Plaintiff's claims regarding staff at FCI Gilmer." <u>Id.</u> at 11. Attached to Defendant's motion to dismiss are copies of 574 pages of Plaintiff's medical records to support that contention. ECF Nos. 20, 20-1. Plaintiff's medical records show that he received diagnoses of, or complained of the following conditions before testing positive for COVID-19 on February 18, 2021[7]:

(1) joint and muscle pain chronic care for right shoulder and left ankle pain, diagnosed as early as May 15, 2018, and documented on multiple occasions including August 24, 2020 [ECF Nos. 20 at 211; 20-1 at 221];

(2) inability to sleep, including sleep apnea diagnosed August 17, 2020 [ECF No. 20-1 at 220];

(3) anxiety treated with Doxepin prescription on July 8, 2020, and documented on August 12, 2020 [ECF No. 20-1 at 15, 123 – 26];

(4) psychological distress was documented in a 2012 forensic evaluation, including a history of five suicide attempts [ECF No. 20-1 at 13];

---

[7] As discussed in Note 3 above, Plaintiff contends he first experienced symptoms of COVID-19 approximately two weeks before February 10, 2021, however, his medical records show that he first tested positive for COVID-19 on February 18, 2021.

(5) PTSD diagnosis date of April 3, 2013, further documented August 24, 2020, August 10, 2020, August 11, 2020, and in a 2012 forensic evaluation [ECF Nos. 20 at 213, 243, 247; 20-1 at 13, 15, 220];

(6) unspecified depressive disorder diagnosed in 2017, and documented August 12, 2020, and August 24, 2020 [ECF Nos. 20 at 213, 243, 247; 20-1 at 15, 220, 222];

(7) hypertension (high blood pressure) diagnosed December 21, 2011, documented multiple dates, including August 24, 2020, September 23, 2020, [ECF No. 20 at 213; 20-1 at 110, 220];

(8) morbid obesity diagnosed November 20, 2017, documented August 12, 2020, August 10, 2020, August 11, 2020, [ECF Nos. 20 at 243, 247; 20-1 at 221]

(9) skin conditions, including prurigo, urticaria, dermatitis, seborrheic dermatitis, psoriasis, furuncle, mycosis, treated on various dates, including January 15, 2020, January 26, 2021, February 7, 2021, February 17, 2021 [ECF Nos. 20 at 198, 243, 247, 251, 254, 257; 20-1 at 12, 41, 220]; and

(10) erectile dysfunction or "unspecified testicular dysfunction", diagnosed February 19, 2014, documented on August 12, 2020 [ECF Nos. 20 at 243, 247; 20-1 at 221].

Further, the medical records document that Plaintiff denied experiencing the following symptoms after contracting COVID-19:

(1)    On May 20, 2021, Plaintiff denied experiencing abdominal pain [ECF No. 20-1 at 44];

(2)    On April 26, 2021, Plaintiff was treated at Sumter Gastroenterology which documented the following denial of symptoms:

| Review of Systems: | |
|---|---|
| Allergic/Immunologic: | Denie ▇▇▇ persistent infections, strong allergic reactions or urticaria. |
| Constitutional: | Denies fatigue, fever, loss of appetite, malaise, sweats, weight gain, weight loss. |
| Eyes: | Denies double vision, loss of vision, photophobia, blurred vision. |
| ENMT: | Denies difficulty swallowing, dizziness, ear pain, nasal obstruction, nose bleeds, sore throat, hearing loss. |
| Integumentary: | Denies allergies, dryness, hives, itching, jaundice, lesions, rashes. |
| Respiratory: | Denies asthma, cough, dyspnea, excessive sputum, hemoptysis, shortness of breath with exercise, wheezing. |
| Cardiovascular: | Denies chest pain, shortness of breath with exercise, irregular heart beat, orthopnea, palpitations, peripheral edema, syncope. |
| Gastrointestinal: | Denies abdominal pain, stomach cramps, abdominal swelling, change in bowel habits, constipation, diarrhea, melena, gas, heartburn, dysphagia, nausea, vomiting, jaundice, rectal bleeding, fecal incontinence. |
| Genitourinary: | Denies dark urine, decrease in urine flow, dysuria, frequent urinary infections, frequent urination, hematuria, impotence, nocturia, urethral discharge or incontinence, incontinence. |
| Musculoskeletal: | Denies arthritis, back pain, gout, joint deformity, joint pain, muscle weakness, stiffness. |
| Neurological: | Denies dizziness, fainting, frequent headaches, migraine, numbness or tingling, seizures, tremors, vertigo, memory loss. |
| Endocrine: | Denies excessive thirst, hair loss, heat intolerance. |
| Hematologic/Lymphatic: | Denies bleeding gums or palpable lymph nodes, easy bruising, prolonged bleeding. |
| Psychiatric: | Denies anxiety, depression, difficulty sleeping, hallucinations, nervousness, panic attacks, paranoia. |

ECF No. 20-1 at 44.

In contrast to his denial of symptoms on April 26, 2021, two months after his release from the hospital for COVID-19, Plaintiff's complaint alleges he continues[8] to suffered the following symptoms after his contraction of COVID-19: (1) sore throat; (2) dehydration; (3) fatigue; (4) shortness of breath with exercise; (5) asthma or wheezing; (6) cough; (7) memory loss; (8) joint pain or muscle weakness; (9) difficulty sleeping; (10) anxiety; (11) depression; (12) ear, chest, abdominal, back, or joint pain; (13) panic attacks; (14) night sweats; (15) dizziness; (16) nausea; (17) headaches or migraine; (18) loss of hair; (19) skin conditions including hives, itching, lesions, and rashes; (20) erectile dysfunction.

Moreover, Defendant argues that there is no evidence that any employee of the United States breached a duty of care to Plaintiff, or that such a breach proximately caused Plaintiff any injury. Id.

Finally, Defendant asserts that venue for Plaintiff's claims related to events at FCI Williamsburg is improper in this Court, because FCI Williamsburg is located in the District

---

[8]  In his complaint signed on July 14, 2022, Plaintiff asserts that he suffered injuries from May 8, 2020, to the present. ECF No. 1 at 9 – 10.

of South Carolina, and prior to his incarceration Plaintiff was a resident of Chadbourn, North Carolina. ECF No. 15 at 11 – 12. Accordingly, Defendant argues that pursuant to 28 U.S.C. § 1402(b), Plaintiff's claims which arose in another judicial district may only be brought in the district where the claims occurred, or in the judicial district where the Plaintiff was domiciled prior to incarceration. Id.

### C.    Plaintiff's Response to Motion to Dismiss

On October 21, 2022, Plaintiff filed a Response to Defendant's motion to dismiss, along with exhibits. ECF Nos. 23, 23-1, 23-2. Therein, Plaintiff argues that his claims do not involve any discretionary function by BOP employees. ECF No. 23 at 5. Plaintiff contends that FCI Williamsburg medical staff deemed it necessary to not confiscate Plaintiff's CPAP machine, whereas FCI Gilmer medical staff deemed it necessary to not confiscate Plaintiff's cellmate's CPAP machine. Id. at 7. Plaintiff reasserts a number of claims against FCI Williamsburg, but fails to address Defendant's assertion that venue for such claims is improper in this district. Id. at 14 – 16, 21 – 22. Plaintiff also reasserts his claims against officials at FCI Gilmer, whom he contends failed to consider: (1) any BOP Guidance on AGPs, and "implemented a blanket denial against" them; (2) Plaintiff's health issues which place him at high risk of severe illness or death from COVID-19; (3) that Plaintiff was hospitalized for 5 days with COVID-19; (4) that the CPAP machine belonging to Plaintiff's cellmate was a "super spreader" machine because of its lack of viral filter and unvented mask; and (5) the administration of supplemental oxygen to his cellmate to mitigate the effects of his cellmate's CPAP machine. Id. at 17 – 18.

Plaintiff argues the Defendant has failed to answer or otherwise plead to the allegations in the complaint against FCI Williamsburg. Id. at 22 – 23. Plaintiff appears to

argue that because the undersigned did not dismiss this action[9] after the Government filed its motion to dismiss, that Plaintiff's argument must have merit as it relates to Plaintiff's claims against FCI Williamsburg. Id. at 23. Further, Plaintiff contends that he resides in West Virginia, where he is incarcerated. Id. at 24. Finally, Plaintiff concludes that his complaint should be permitted to proceed, and reasserts his request for relief. Id. at 25. Plaintiff attaches to his response, affidavits of himself and his cellmate, which reiterate many of the assertions in the response itself. ECF Nos. 23-1, 23-2.

### D.    Additional Pending Motions and Responses Thereto

On January 3, 2023, Plaintiff filed a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 24. Thereafter, on January 9, 2023, and January 23, 2023, Plaintiff filed two motions for default judgment. ECF Nos. 25, 26. Defendant filed a response in opposition to all three of Plaintiff's motions on January 23, 2023, arguing that Defendant addressed all of Plaintiff's claims in the motion to dismiss. ECF No. 27. On February 3, 2023, Plaintiff filed a reply which contends that because Defendant failed to deny, oppose or rebut his factual allegations or arguments, and thus he is entitled to relief. ECF No. 28.

## III.    LEGAL STANDARD

### A.    Review of Complaints

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such complaint and submit findings and recommendations to the District Court. This Court is charged to "hear and determine any pretrial matter pending before the court, except a motion for

---

[9] The undersigned notes that pursuant to 28 U.S.C. § 636(b)(1)(A), a district judge may not designate certain pretrial matters to a magistrate judge, including a motion to dismiss.

injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[10] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### C.    Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action

---

[10] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.

> In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b). A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[11]

---

[11] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency, is the only proper defendant in an FTCA lawsuit. See 28 U.S.C. 2679(a); Webb v. Hamidullah, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); Allfgeir v. U.S., 909 F.2d 869 (6th Cir.

---

on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. <u>FDIC v. Myer</u>, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); <u>Blanchard v. United States</u>, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), <u>aff'd</u> 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA.

A number of statutory exceptions apply to the Federal Tort Claims Act, including an exception for any discretionary function, or for any damages related to establishment of a quarantine:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> . . . .
>
> (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

28 U.S.C.A. § 2680.

**D.      Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative

factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.    ANALYSIS

As recognized by the Supreme Court in Brownback v. King, 141 S. Ct. at 746, an FTCA claim is actionable if it alleges the six elements of 28 U.S.C. § 1346(b), which are that the claim be: (1) against the United States; (2) for money damages; (3) for injury or

loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Plaintiff asserts that he incurred at least 41 injuries as a result of the action or inaction of BOP employees during the COVID-19 pandemic, while incarcerated at FCI Williamsburg and FCI Gilmer. ECF No. 1 at 9, 18. Defendant's motion to dismiss argues that: (1) the discretionary function exception to the FTCA excludes the United States from liability for such a claim [ECF No. 15 at 4]; (2) the quarantine exception to the FTCA excludes the United States from liability, because the United States has not waived its sovereign immunity in relation to quarantine situations [Id. at 9]; (3) Plaintiff's claims of medical negligence are meritless, attaching 574 pages of medical records to dispute those claims [ECF Nos. 15 at 10, 20, 20-1]; and (4) venue in this district is improper to address Plaintiff's claims regarding FCI Williamsburg [ECF No. 15 at 11].

The undersigned addresses each of Defendant's four arguments, although not in the order presented.

### A.    Claims Against FCI Williamsburg

Defendant contends that this district is an improper venue to consider Plaintiff's claims which are alleged to have occurred at FCI Williamsburg. ECF No. 15 at 11. Venue is the federal district courts is governed by 28 U.S.C. § 1391, which provides in part that, "For all venue purposes [ ] a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the

judicial district in which that person is domiciled." 28 U.S.C. § 1391 (c)(1). Further, 28 U.S.C. § 1402(b) provides, "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

The Fourth Circuit has recognized that "a prisoner's domicile is presumed to be where he was domiciled prior to incarceration." Roberts v. Morchower, 956 F.2d 1163 (4th Cir. 1992). See Ownby v. Cohen, 19 F. Supp. 2d 558, 563 (W.D. Va. 1998), aff'd, 194 F.3d 1305 (4th Cir. 1999) ("prisoners usually retain the domicile they had prior to incarceration") (citing 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3618 (1984), Price v. Carr–Price, 23 F.3d 402, No. 94–1152, 1994 WL 183468 at FN* (4th Cir.1994) (affirming dismissal of action brought by prisoner against his wife, noting that diversity jurisdiction exists only when prisoner is domiciled, prior to incarceration, in state other than where defendant resides).

Plaintiff's incarceration at FCI Gilmer is based on his conviction in the Eastern District of North Carolina in case number 7:11-CR-90. On November 26, 2012, a Pre-Sentence Report (PSR) was prepared that shows Plaintiff's legal address in the town of Chadbourn, North Carolina. E.D.N.C. 7:11-CR-90, ECF No. 82 at 2. Accordingly, the undersigned finds that prior to his incarceration, that Plaintiff's domicile was in Chadbourn, North Carolina, in the Eastern District of North Carolina, as reflected in the Pre-Sentence Report issued in Plaintiff's criminal case. E.D.N.C. 7:11-CR-90, ECF No. 82. Further, it is clear that Plaintiff's claims regarding acts alleged to have occurred at FCI Williamsburg occurred in the District of South Carolina.

For all these reasons, the undersigned finds that pursuant to 28 U.S.C. § 1402(b), this Court presents an improper venue for Plaintiff's claims concerning FCI Williamsburg, because: (1) prior to his incarceration Plaintiff was not domiciled in this district; and (2) the acts he complains of related to FCI Williamsburg did not occur in this district. Accordingly, Plaintiff's claims concerning FCI Williamsburg should be dismissed with prejudice based on improper venue.

### B.     The Discretionary Function Exception

As to Plaintiff's claims which are alleged to have occurred at FCI Gilmer, the undersigned finds that the discretionary function exception precludes Plaintiff from relief. The Fourth Circuit has previously recognized that when the Government argues that the discretionary function exception applies, it is essentially an assertion that the court lacks subject matter jurisdiction. Tyree v. United States, 814 F. App'x 762, 766 (4th Cir. 2020). The undersigned agrees with Defendant's argument that the discretionary function exception applies here, and that this Court lack subject matter jurisdiction to consider Plaintiff's claims.

The discretionary function exception is codified in subsection (a) of the exceptions statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

In Blanco Ayala v. United States, 982 F.3d 209, 214–15 (4th Cir. 2020), the Fourth Circuit summarized the analysis which must be performed to determine whether the discretionary function exception bars an FTCA claim:

> To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.
>
> Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id.* at 537, 108 S.Ct. 1954. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In conducting this analysis, we do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

As to the first prong articulated in Blanco Ayala, the Supreme Court has stated that "conduct cannot be discretionary unless it involves an element of judgment or choice." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). Further, "if the employee's conduct cannot appropriately be the product of judgment or choice then there is no discretion in the conduct for the discretionary function exception to protect." Id. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'

because 'the employee has no rightful option but to adhere to the directive.'" United States v. Gaubert, 499 U.S. 315, 322 (1991) (*quoting* Berkovitz).

Thus, to meet the first prong of the Blanco Ayala analysis, the Plaintiff must establish that the Government's agents, whom he accuses of negligence [ECF No. 1 at 6, 13, 17], were not performing a discretionary function at the time he alleges he was injured, and instead were performing a mandatory course of action pursuant to statute, regulation, or policy. However, it is clear that Plaintiff is unable to demonstrate either fact.

Although Plaintiff claims that he has established subject matter jurisdiction and that a waiver of sovereign immunity exists in his case, his arguments do not support his claims that BOP employees' actions did not involve any discretionary function. ECF No. 23 at 5 – 7. Three examples are instructive: (1) Plaintiff quotes at length from the "BOP Guidance of Aerosol Generating Procedures (AGPs)" dated May 8, 2020,[12] which in outlining the general principles of the Guidance reads, "Determine whether the AGP is medically necessary. The risk of the procedure given the current situation should be weighed against the risk of temporary discontinuation." [Id. at 7]; (2) Plaintiff argues that FCI Gilmer medical staff "deemed it medically necessary" to permit Plaintiff's cellmate to keep his CPAP machine [Id. at 7]; and (3) Plaintiff contends that CPAP users at FCI Gilmer "are placed all over the housing unit" [Id. at 11]. All three of these arguments show that BOP employees must exercise discretion when they: (1) determine whether an action is medically necessary, and weigh the current situation against possible risks; (2) deem whether it is medically necessary for an inmate to have a medical device; and

---

[12]  Plaintiff cites to "Plaintiff Appendix 20", which was filed with his complaint and docketed by the Clerk as ECF No. 1-3 at 1.  That document bears the handwritten notation "Michael Shawn Brown Appendix 20".  Id.

(3) determine inmate cell placements.

Further, it appears that BOP employees appear to have engaged in a discretionary function in determining whether and when to implement a quarantine, and what steps to take related to the same. The BOP is charged with the discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042. That statute provides in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." However, as the Fourth Circuit has held, "decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials." Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002). Accordingly, decisions made by BOP officials related to the accommodation of inmates rest firmly within the discretionary function of those officials.

Moreover, a review of the Guidance on AGPs shows that the language through the Guidance is discretionary, not mandatory. Throughout the updated May 11, 2020, Guidance, these words and phrases appear in the following frequency:

(1)      "should" appears 22 times;

(2)       "must" appears 6 times;

(3)      "may" appears 4 times; and

(4)      "when possible" appears once.

See https://www.bop.gov/foia/docs//COVIDAerosolGuidanceMay8.pdf at 5 – 7. The six mandatory directives of "must" are as follows:

(1)      "[S]trong consideration must be taken to minimize the use of AGPs as

22

much as possible" [Id. at 5];

(2)     "If a nebulizer must be used. . ." [Id.];

(3)     "Room and equipment must be disinfected when finished" [Id. at 6];

(4)     "Room and equipment must be disinfected prior to allowing a new patient to occupy a room previously used by a CPAP/BiPAP user." [6]

(5)     "CPAP/BiPAP must be set up and used with a full-face, non-vented CPAP mask with an inline viral filter." [Id.]; and

(6)     "Room and equipment must be disinfected prior to allowing a new patient to occupy a room previously used by a CPAP/BiPAP user." [Id. at 7].

As to the fifth of these instances, which Plaintiff argues merits relief, the next bullet point of the Guidance provides, "***If the recommended setup is not readily obtainable***, the humidifier chamber should be removed from the device when possible or the device be used without humidification." Id. (emphasis added). The discretionary language of the Guidance clearly contains alternatives for consideration and implementation, including as relates to availability of full-face, non-vented CPAP mask with an inline viral filter. For all these reasons, it appears that regardless of the date of implementation of the Guidance, BOP employees retained discretion thereunder in how to implement that Guidance. Because BOP employees maintained discretion which involved an element of judgment or choice in their actions, Plaintiff cannot meet the first prong of the Blanco Ayala test.

As to the second prong of the Blanco Ayala test, Plaintiff is also incapable of demonstrating that he is entitled to relief. The FTCA's discretionary function exception only applies to discretionary conduct that is based on social, economic, or political

goals. Where an established government policy—such as the BOP policies related to the provision of suitable quarters for inmates, and for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States—allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Gaubert</u>, 499 US at 324. Therefore, a complaint cannot survive a motion to dismiss unless it alleges facts that would support a finding that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." <u>Id.</u> at 324 – 25. Congress in enacting 18 U.S.C. § 4042, granted to BOP employees discretion with respect to how to best ensure the safekeeping, care, and subsistence for all inmates in their suitable quarters. Such responsibility is based on the considerations of public policy related to inmate safety and welfare. Accordingly, the decision of BOP staff related to accommodation of inmates, including Plaintiff sharing a cell with an inmate who used a CPAP machine, falls within the discretionary function exception to the FTCA. To the extent that the Plaintiff alleges that BOP employees' actions were negligent as relates to the accommodation of inmates at FCI Gilmer, in response to the COVID-19 pandemic, the discretionary function applies, and the United States is immune from liability for the Plaintiff's complaint.

Because Defendant is immune from suit under the Federal Tort Claims Act when the act or omission complained of is covered by the discretionary function exception, Plaintiff's complaint fails. Even if Plaintiff demonstrated that he meets all six prongs to assert a cause of action under the FTCA and <u>Brownback</u>, his claim still fails. Regardless of whether the alleged injuries he suffered from contracting COVID-19 on or around

February 18, 2021,[13] were caused by the negligent or wrongful act or omission of any employee of the Government, the discretionary function exception still applies, and Plaintiff's claims are not actionable under the FTCA.

### C.     The Quarantine Exception to the FTCA

Moreover, the Government is immune from suit for any claim related to a quarantine. "The provisions of this chapter and section 1346(b) of this title shall not apply to--(f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C.A. § 2680.

To the extent that Plaintiff argues that BOP employees were mandated to take specific action based on any BOP Guidance on AGPs, he fails to cite to authority which supports that claim. Plaintiff refers to the Guidance, which do exist, but which are not mandatory. Rather, Plaintiff asserts broadly, in contravention to the authority he cites, that BOP employees do not have authority to exercise discretion, but that their actions were mandatory, and that BOP employees were required to implement the Guidance for AGPs. ECF No. 1 at 15 – 16. Without any authority to dictate the actions of the BOP or its employees, it is clear that BOP employees' actions are discretionary.

Further, the BOP, like the rest of the country, indeed the world, imposed a quarantine on or around March 2020, to address the global COVID-19 pandemic. The imposition of a quarantine is expressly listed in 28 U.S.C. § 2680(f) as an area where the Government maintains its sovereign immunity. Accordingly, even if Plaintiff were able to demonstrate that he meets the six elements for an FTCA claim under the <u>Brownback</u> test, his claim is still subject to dismissal, because the Government maintains sovereign immunity.

---

[13] See Note 3 herein.

**D.     Medical Negligence Claims**

To the extent that Plaintiff contends that he was provided inadequate medical care, he is not entitled to relief under the FTCA. "In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983), citing Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960) ("Graham's death and the wrongful act or omission which allegedly caused it occurred within the State of Oregon, and liability must therefore be determined in accordance with the law of that place." 361 U.S. at 318). Accordingly, this Court must apply the substantive law of the state in which the act or omission was alleged to have occurred. For Plaintiff's claims alleged to have occurred in FCI Gilmer, in Glenville, West Virginia, the substantive law of West Virginia must be applied.

W. Va. Code § 55-7B-3(a) provides that:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> (2) Such failure was a proximate cause of the injury or death.

Pursuant to West Virginia Code § 55-7B-7, "[t]he applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff."

Defendant argues that "[n]o facts or evidence exist supporting Plaintiff's claims regarding staff at FCI Gilmer. . . Plaintiff's medical negligence claims are vague, speculative, and fail to allege that any specific acts or omissions caused his purported injuries." ECF No. 15 at 11. Further, Defendant argues that Plaintiff failed to establish that any United States employee breached a duty of care owed to Plaintiff. Id.

A review of the 574 pages of medical records appears to support Defendant's argument. Plaintiff claims 41 separate injuries as a result of BOP employees' conduct, but fails to specify how such conduct proximately caused his alleged injuries.  Moreover, Plaintiff's medical records shows both that at least ten of the "injuries" he claims to have suffered since the start of the COVID-19 pandemic predated the pandemic, and that two months after he contracted COVID-19, that Plaintiff denied to a medical provider that he experienced twenty of the symptoms he alleges to have suffered herein as a result of COVID-19.

Plaintiff asserts a claim for medical negligence[14] against various BOP employees at FCI Gilmer [ECF No. 1 at 6, 17 – 18] including Warden Wolfe, Clinical Director D.O. McCoy, Assistant Health Services Administrator Mrs. Thomas, arguing those individuals committed outrageous conduct and reckless infliction of severe mental and physical suffering and injury. However, Plaintiff fails to explain how his medical treatment fell below the applicable standard of care or how any of the actions or inactions of the BOP employees proximately caused him any injury.

---

[14] To the extent that Plaintiff named employees of FCI Williamsburg including Dr. Hoey, Dr. Dominici, Mrs. Brown, C. Davis, "unknown warden", and "unknown Health Services Administrator [ECF No. 1 at 6, 13 – 14], the undersigned does not address those claims, because this is the improper venue to do so.

27

To the extent that Plaintiff contends he was "injured" by the alleged failure to implement the Guidance on AGPs, as discussed above, the Guidance is discretionary, and thus subject to the discretionary function exception discussed above. Moreover, a failure to implement *discretionary* Guidance does not meet the requirement of West Virginia Code § 55-7B-3(a), which requires proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care .

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction to consider this matter. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint as to the United States of America be **DISMISSED WITH PREJUDICE** as to all claims alleged to have occurred at FCI Williamsburg, and **WITHOUT PREJUDICE** for lack of subject matter jurisdiction as to all other claims.

It is further **RECOMMENDED** that Defendant's motion to dismiss [ECF No. 15] be **GRANTED**, and that Plaintiff's motion for judgment on the pleadings [ECF No. 24], and motions for default judgment [ECF Nos. 25, 26] be **TERMINATED** as **MOOT**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections

should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        April 28, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE