IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MICHAEL SHAWN BROWN,**

      Plaintiff,

v.                                 CIVIL ACTION NO.: 3:22-CV-124
                                      (GROH)

**UNITED STATES OF AMERICA,**

      Defendant.

### ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the Court is a Report and Recommendation ("R&R") entered by United States Magistrate Judge Robert W. Trumble, filed April 28, 2023. ECF No. 29. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 2 of the Local Rules of Prisoner Litigation Procedure, this action was referred to Magistrate Judge Trumble for submission of an R&R. Therein, Magistrate Judge Trumble recommends that this Court dismiss with prejudice the allegations in the Complaint that address events that occurred in FCI Williamsburg and dismiss without prejudice the remaining claims. On June 5, 2023, after being granted an extension of time by this Court, the Michael Shawn Brown ("Plaintiff") timely filed his Objections to the R&R, along with a Motion for Leave to File Excess Pages. ECF Nos. 34, 35. Accordingly, this matter is now ripe for adjudication.

**I. Background**

The Plaintiff acting pro se, filed a Complaint pursuant to the Federal Tort Claims ACT ("FTCA") while incarcerated at the Gilmer Federal Correctional Institution ("FCI Gilmer"). ECF No. 1. In his complaint, Plaintiff raises claims of intentional infliction of

emotional distress and negligence stemming from the institutional response to the COVID-19 pandemic at Williamsburg Federal Correctional Institution ("FCI Williamsburg") and FCI Gilmer. The Plaintiff alleges that Bureau of Prisons ("BOP") staff failed to follow the BOP Guidance on Aerosol Generating Procedures governing the use of CPAP machines when providing care to his cellmate. In terms of injuries suffered, the Plaintiff lists over forty medical conditions and symptoms, ranging from drooling to memory loss, from strep throat to erectile dysfunction, and from nausea to nightmares, among many others. For relief, the Plaintiff requests $20,000,000.00 in compensatory damages.

On September 29, 2022, the Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 15. Therein, the Defendant argues that this Court lacks subject matter jurisdiction over the Plaintiff's complaint because (1) the FTCA's discretionary function exception applies, (2) the FTCA's quarantine exception applies, (3) the Plaintiff's claims of medical negligence lack merit, and (4) the Plaintiff's claims pertaining to events at FCI Williamsburg are improper in this venue. In support of its first argument, the Defendant asserts that the Bureau of Prisons Guidance document cited by the Plaintiff does not qualify as a federal statute, regulation, or policy that prescribes a specific, mandated course of action for employees to follow. Instead, the institutional response to COVID-19, particularly as it pertains to the use of CPAP machines, involves an element of judgment. Further, the Defendant argues that this element of judgment is of the kind that the discretionary function exception was designed to shield because it required significant policy analysis. The Defendant also argues that the FTCA bars claims involving the imposition or establishment of a quarantine.

Next, the Defendant argues that the Plaintiff cannot sufficiently allege a medical

malpractice claim under West Virginia law. In particular, the Defendant avers that the Plaintiff has failed to allege facts sufficient to find that any of the Defendant's employees acted or failed to act in a way that breached a duty or caused harm. Lastly, the Defendant argues that the Plaintiff's claims addressing events that occurred in FCI Williamsburg are not properly before this Court. The Defendant explains that FCI Williamsburg is in the District of South Carolina and that the Defendant resided in North Carolina prior to his incarceration at FCI Williamsburg. Thus, the Defendant avers that all of the Plaintiff's claims relating to acts or omissions that occurred at FCI Williamsburg are not properly brought before this Court and should be dismissed for improper venue.

The Plaintiff filed a Response to the Defendant's motion on October 21, 2022. ECF No. 23. Therein, the Plaintiff argues that his claims do not involve any discretionary function by BOP employees. The Plaintiff reasserts his claims against FCI Williamsburg without addressing the issue of proper venue for those claims. The Plaintiff also reasserts his claims against staff at FCI Gilmer for their failure to follow BOP guidance related to aerosols and CPAP machines. Additionally, the Plaintiff argues that the Defendant failed to answer or otherwise plead in regards to the allegations against FCI Williamsburg. Lastly, the Plaintiff contends that he resides in West Virginia, where he is now incarcerated.

In January 2023, the Plaintiff filed a Motion for Judgment on the Pleadings and two Motions for Default Judgment. ECF Nos. 24, 25, 26. The Defendant filed a Response in opposition to all three of the Plaintiff's motions, asserting that it addressed all the Plaintiff's claims in its motion to dismiss. ECF No. 27. The Plaintiff entered a Reply arguing that the Defendant failed to deny, oppose, or rebut the arguments raised in his complaint.

3

On April 28, 2023, Magistrate Judge Robert W. Trumble entered an R&R, recommending that the Plaintiff's complaint be dismissed. ECF No. 29. First, the magistrate found that this Court is an improper venue for the Plaintiff's claims related to events that occurred at FCI Williamsburg. In particular, the magistrate found that FCI Williamsburg is not located in this district and, prior to his incarceration, the Plaintiff was not domiciled in this district.

Next, as it pertained to the Plaintiff's claims involving FCI Gilmer, the magistrate found that the discretionary function precludes the Plaintiff from relief. The magistrate found that the Plaintiff failed to show that the FCI Gilmer employees were not performing a discretionary function at the time he was injured and failed to show that the FCI Gilmer employees were instead performing a mandatory course of action governed by a statute, regulation, or policy. In his analysis, the magistrate identified specific language from the BOP Guidance relied on by the Plaintiff and explained how the language informs the reader that the guidance is discretionary, not mandatory. Further, the magistrate found that the FTCA's quarantine exception applies and provides the Defendant with immunity from suit for any claim related to a quarantine. Therefore, all the actions taken by the Defendant—determining whether, when, and how to implement a quarantine—are precluded under either the discretionary function or quarantine exception of the FTCA.

Lastly, the magistrate found that the Plaintiff failed to state a medical malpractice claim under West Virginia state law. After reviewing over five hundred pages of medical records, the magistrate found that at least ten of the injuries the Plaintiff alleges in this suit predate the COVID-19 pandemic. Moreover, the magistrate found that two months after the Plaintiff contracted COVID-19, he denied having twenty of the symptoms he now

4

alleges in this suit. Ultimately, of the forty-one injuries the Plaintiff alleges in his complaint, the magistrate found no evidence that those injuries resulted from the conduct of FCI Gilmer employees.

Based on his reported findings, the magistrate recommends that this Court dismiss with prejudice the Plaintiff's claims against FCI Williamsburg for lack of proper venue and dismiss without prejudice the remaining claims for lack of subject matter jurisdiction. After being granted an extension of time by this Court, the Plaintiff filed his objections to the R&R, along with a motion for leave to file excess pages, on June 5, 2023. ECF Nos. 34, 35. The Plaintiff's objections and motion for leave remain pending before this Court and are ripe for adjudication.

## II.  Legal Standards

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a de novo review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). Further, failure to file timely objections constitutes a waiver of de novo review and the Plaintiff's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

Under this Court's Local Rules, "written objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection." LR PL P 12(b). Objections "shall not exceed ten (10)

typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation." LR PL P 12(d). "Failure to comply with the page limitations set forth in these Rules will, upon Court order, result in the entire document being stricken from the docket." LR PL P 11.

"When a party does make objections, but these objections are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, de novo review is unnecessary." Green v. Rubenstein, 644 F. Supp. 2d 723, 730 (S.D. W.Va. 2009) (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "When only a general objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a clear error review." Williams v. New York State Div. of Parole, No. 9:10-CV-1533 (GTS/DEP), 2012 WL 2873569, at *2 (N.D.N.Y. July 12, 2012). "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a clear error review." Taylor v. Astrue, 32 F. Supp. 3d 253, 260-61 (N.D.N.Y. 2012).

Courts have also held that when a party's objection lacks adequate specificity, the party waives that objection. See Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (finding that even though a party filed objections to the magistrate judge's R&R, they were not specific enough to preserve the claim for review). Bare statements "devoid of any reference to specific findings or recommendations . . . and unsupported by legal authority, [are] not sufficient." Id. at 766. Indeed, under the Federal Rules of Civil Procedure and this Court's Local Rules, "referring the court to previously filed papers or

arguments does not constitute an adequate objection." Id.; see also Fed. R. Civ. P. 72(b); LR PL P 12. Finally, the Fourth Circuit has long held that "[a]bsent objection, we do not believe that any explanation need be given for adopting [an R&R]." Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983) (finding that without an objection, no explanation is required of the district court when adopting an R&R).

### III. Analysis

Now pending before this Court are the Plaintiff's motion for leave to file excess pages [ECF No. 34] and objections to the magistrate's R&R [ECF No. 35]. The deadline to file objections and the deadline to respond to the Plaintiff's objections have lapsed without submission from the Defendant. Both the Plaintiff's motion and objections are ripe for review, and the Court will address each filing in turn.

**A. Motion for Leave to File Excess Pages**

Under this Court's Local Rules, objections to an R&R "shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation." LR PL P 12(d). Here, the Plaintiff's objections total sixty-six pages, exceeding this Court's page limitations three times over. In his motion requesting leave for excess pages, the Plaintiff first argues that the handwritten argumentative portion of his objections is limited to twenty-five pages. Even so, this Court's page limitation explicitly includes exhibits in the limitation, and the page limitation is twenty pages, not twenty-five.

Next, the Plaintiff argues that the magistrate's R&R "was a lengthy 29 pages and full of objection material." ECF No. 34 at 1. The Plaintiff also included the R&R as an exhibit attached to his objections. Lastly, the Plaintiff asserts that his objections and

7

attached exhibits are critical to this Court's review and appellate review if necessary.

Upon review and consideration, the Court finds good cause to allow the Plaintiff to exceed this Court's page limitation. Accordingly, the Plaintiff's Motion for Leave to File Excess Pages [ECF No. 34] is **GRANTED**.

### B. Objections

In his filing, the Plaintiff raises thirteen objections to the magistrate's R&R. ECF No. 35. Many assertions made by the Plaintiff in his objections are contradicted by his own medical records. The remainder of his objections mostly reassert slightly different iterations of the same central argument: that the BOP Guidance promulgates a mandatory course of action. The Court will address each objection in turn.

In his first objection, the Plaintiff objects to the magistrate's finding that the Plaintiff listed "a number of other medical conditions which he claims to have, but does not assert those conditions were caused, or exacerbated, by the actions of the Government's agents." ECF No. 29 at 3 n.4. The Plaintiff argues that his PTSD is an exacerbated injury, along with the comorbidities related to PTSD, including anxiety, depression, and psychological distress.

However, in the sentence following the quoted excerpt, which was omitted by the Plaintiff, the magistrate clarifies that he is referring to "hypothyroidism, hyperlipidemia, astigmatism, refractive amblyopia, myrosis [sic], and prurigo." Id. Further, the magistrate listed "worsening PTSD," anxiety, depression, and psychological distress as injuries alleged by the Plaintiff. The Court finds that the Plaintiff misinterpreted the focus of the magistrate's footnote. Therefore, the Plaintiff's first objection is **OVERRULED**.

Second, the Plaintiff objects to the magistrate's finding that the Plaintiff's medical

records show a diagnosis for joint and muscle pain for his right shoulder and left ankle dating back to May 15, 2018. The Plaintiff argues that his joint and muscle pain resulted from his COVID-19 infection and subsequent long COVID-19 condition. Upon review of the Plaintiff's medical records, this Court finds that the Plaintiff's joint and muscle pain for his right shoulder and left ankle predates the Plaintiff's diagnosis of COVID-19. For example, the Plaintiff's BOP Health Services Clinical Encounter dated August 13, 2020, states that the Plaintiff *continues* to experience pain in his right shoulder and left ankle. ECF No. 20 at 221. Presumably, this pain existed before August 2020; the Plaintiff did not contract COVID-19 until February 2021.

Further, the Plaintiff's medical records document *chronic* shoulder pain as early as May 2018. ECF No. 20-1 at 221. Similarly, the Plaintiff's right shoulder pain existed prior to May 2018, which long predates not only the Plaintiff's COVID-19 diagnosis but the onset of the COVID-19 pandemic entirely. Thus, the Court finds that the Plaintiff's shoulder and ankle joint and muscle pain predate his COVID-19 diagnosis. Accordingly, the Plaintiff's second objection is **OVERRULED**.

Next, in his third objection, the Plaintiff objects to the magistrate's finding that his sleep apnea diagnosis dates back to August 17, 2020. As in his prior objection, the Plaintiff also argues that his inability to sleep stems from his long COVID-19 condition. Again, upon review of the Plaintiff's medical records [ECF No. 20-1 at 220], the Court confirms the magistrate's finding that the Plaintiff had a sleep apnea diagnosis on August 17, 2020, which predates the Plaintiff's contraction of COVID-19. Moreover, the Plaintiff's medical record also notes a 2009 sleep study connected to his sleep apnea diagnosis. Therefore, the Plaintiff's third objection is **OVERRULED**.

Fourth, the Plaintiff's objects to the magistrate's finding that he was diagnosed with hypertension on December 21, 2011, which was later documented again on August 24, 2020, and September 23, 2020. The Plaintiff again argues that his hypertension worsened after he contracted COVID-19. The Plaintiff avers that he was prescribed "lisinopril/hydrochlorothiazide 20/12.5 mg tab, amlodipine 10 mg tab, and furosemide 40 mg tab" only after he contracted COVID-19. ECF No. 35 at 3. However, upon review of the Plaintiff's medical records, the Court finds that the Plaintiff was prescribed 20mg tabs of lisinopril as early as July 2019, months before the COVID-19 pandemic even began. ECF No. 20-1 at 240. The Court is unable to find any record of the Plaintiff's prescription for amlodipine or furosemide in the medical records that were available to the magistrate [ECF No. 20] or in the exhibits the Plaintiff attached to his objections [ECF No. 35-1]. Accordingly, the Plaintiff's fourth objection is **OVERRULED**.

Next, in his fifth objection, the Plaintiff similarly objects to the magistrate's finding that he was diagnosed with "erectile dysfunction or 'unspecified testicular dysfunction'" on February 19, 2014, as documented on August 12, 2020. Instead, the Plaintiff avers that this condition resulted from his COVID-19 infection. Upon review of the Plaintiff's medical records the Court finds that the Plaintiff was first diagnosed with unspecified testicular dysfunction on February 19, 2014. ECF No. 20-1 at 221. Therefore, having found that the Plaintiff's diagnosis predates his COVID-19 infection, the Plaintiff's fifth objection is **OVERRULED**.

Sixth, the Plaintiff objects to the magistrate's finding that the Plaintiff failed to address the Defendant's improper venue argument when reasserting his claims against FCI Williamsburg in his response to the Defendant's motion to dismiss. In his R&R, the

10

magistrate noted that the Plaintiff appeared to "argue that because the undersigned did not dismiss this action after the Government filed its motion to dismiss, that Plaintiff's argument must have merit as it relates to Plaintiff's claims against FCI Williamsburg." ECF No. 29 at 9 (footnote omitted). In his objection, the Plaintiff once again argues that because the magistrate did not dismiss this action, he can continue with his claims against FCI Williamsburg. As explained by the magistrate, magistrate judges may not rule on motions to dismiss. Indeed, this Court similarly finds that the lack of a dismissal order from the magistrate does not bestow venue on the Plaintiff for his claims against FCI Williamsburg.

In his objection, the Plaintiff further argues that "there are no venue restrictions that apply to the government" and that the Plaintiff "resides in West Virginia." ECF No. 35 at 3-4. Additionally, the Plaintiff avers that his claims and injuries arise out of the same set of facts involving FCI Williamsburg and FCI Gilmer, so he should be allowed to proceed before this Court with claims against employees from both institutions. However, this Court finds that it is an improper venue for the Plaintiff's claims related to events that occurred at FCI Williamsburg, and there are indeed venue restrictions that apply to civil cases, including the civil action presently before this Court. Moreover, because the Plaintiff merely reiterates the same arguments previously made in his filings before the magistrate, this Court need only apply a clear error review to his sixth listed objection. Taylor, 32 F. Supp. 3d at 260-61.

Venue in federal district courts is governed by 28 U.S.C. § 1391, which provides in part that, "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which

11

that person is domiciled." 28 U.S.C. § 1391 (c)(1). Further, 28 U.S.C. § 1402 provides, "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). The Fourth Circuit has recognized that "a prisoner's domicile is presumed to be where he was domiciled prior to incarceration." Roberts v. Morchower, 956 F.2d 1163 (4th Cir. 1992); see Ownby v. Cohen, 19 F. Supp. 2d 558, 563 (W.D. Va. 1998), aff'd, 194 F.3d 1305 (4th Cir. 1999) (finding that "prisoners usually retain the domicile they had prior to incarceration") (citing 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3618 (1984)).

This Court finds that FCI Williamsburg is not located in this district, and, prior to his incarceration, the Plaintiff was not domiciled in this district. FCI Williamsburg is located in Salters, South Carolina, and falls under the jurisdiction of the District of South Carolina. Prior to his incarceration, the Plaintiff was domiciled in Chadbourn, North Carolina, which falls under the jurisdiction of the Eastern District of North Carolina. ECF No. 82 at 2 in 7:11-CR-90-1 in E.D.N.C. Therefore, the Plaintiff cannot establish venue with this Court for his claims against FCI Williamsburg. Accordingly, finding no clear error, the Plaintiff's sixth objection is **OVERRULED**.

In his seventh objection, the Plaintiff again objects to the magistrate's finding that this Court is an improper venue for the Plaintiff's claims involving FCI Williamsburg. The Plaintiff expands upon his objection to the magistrate's finding that the Plaintiff was not previously domiciled in this district and FCI Williamsburg is not within the reach of this Court's jurisdiction. The Plaintiff argues that the magistrate erroneously applied the venue

12

requirement for criminal cases that requires that a trial be held in the state or district where the crime was committed. The Plaintiff reasserts his contention that no venue restrictions apply to the government and that the government can file cases in any district or state of its choosing regardless of where the act occurred or where an individual lives. The Plaintiff believes that he similarly should be allowed to file his lawsuit anywhere. The Plaintiff reiterates that his injuries and claims arise out of the same set of facts involving FCI Williamsburg and FCI Gilmer, so jurisdiction is proper in this district. Lastly, the Plaintiff requests that if his objection is overruled and his pending motions are denied, that this Court issue an order directing that a copy of the docket be forwarded to the appropriate jurisdiction.

As with his sixth objection, the Plaintiff has merely reasserted arguments previously made in his filings before the magistrate. Further, his seventh objection objects to the same findings as his sixth objection. Therefore, the Plaintiff's seventh objection is **OVERRULED** for all the same reasons provided above in this Court's analysis of the Plaintiff's sixth objection.

Next, the Plaintiff objects to the magistrate's finding that the discretionary function of the FTCA applies and precludes the Plaintiff's claims involving events that occurred at FCI Gilmer. The Plaintiff quotes the magistrate's finding from page twenty-one of the R&R at length. The Plaintiff then states that he vehemently disagrees with the magistrate's characterization of the BOP Guidance on Aerosol Generating Procedures governing the use of CPAP machines. The Plaintiff also cites to later-issued Guidance from the BOP regarding the use of CPAP machines. Despite the Plaintiff's repeated assertions that the BOP Guidance documents dictate a specific, mandatory course of action, it is plainly

13

obvious that they do not.

Much like the BOP Guidance excerpts quoted by the Plaintiff in his earlier filings, the Plaintiff has still failed to show how the BOP Guidance amounts to a mandatory course of action pursuant to statute, regulation, or policy. The use of "guidance" in the title is instructive; the document cited by the Plaintiff is not titled "BOP Requirements" or "BOP Mandated Procedure" but "BOP Guidance on Aerosol Generating Procedures (AGPs)." BOP Guidance on Aerosol Generating Procedures (AGPs), Version 1.1, at 1, May 8, 2020.

The main source of support for the Plaintiff's argument stems from the BOP Guidance related to patients with severe sleep apnea, which states that "when the decision is made to allow the patient to continue using CPAP/BiPAP, the machine must be set up and used with a full-face, non-vented CPAP mask with an in-line viral filter attached to the intake and exhalation ports." BOP Pandemic Response Plan, Appendices, Version 9.0, Appendix U. The Plaintiff's argument hinges on the use of "must" in this excerpt. This is the only excerpt quoted by the Plaintiff in his objection and attached thereto, and the Plaintiff claims that this is the mandatory procedure. However, this excerpt is not the extent of the BOP's Guidance on this issue. Indeed, the excerpt quoted by the Plaintiff is merely an appendix to a larger module, which in turn is only part of a larger framework.

Upon review of the BOP's Guidance on aerosol generating procedures *as a whole*, it is clear that, like earlier guidance, the instructions are discretionary. Under the section governing "severe sleep apnea with co-morbidities," the Guidance states that "the following procedures *should* be *considered* to mitigate the spread of COVID-19." BOP

14

Guidance on AGPs, Version 1.1, at 2. Further, the Guidance provides alternatives "[i]f the recommended setup is not readily obtainable." Id. at 2, 7. When the Guidance is read in full, not cherry-picked appendix excerpts, the intent of the Guidance is clearly to provide helpful instruction that may guide BOP employees in their use of discretion when making decisions related to the use of CPAP machines. Moreover, the updated Guidance is substantially similar to the earlier versions used by the magistrate.

Further, the Guidance is but one part of a larger BOP Pandemic Response Plan. The first module of the BOP Plan reads as follows, "This framework recognizes that pandemics can make ordinary or well-established standards difficult or impossible to achieve and proposes reasonable alternative standards that provide an acceptable balance of risk and benefit, in light of the limitations created by the pandemic." BOP COVID-19 Pandemic Response Plan 4.0, Module 1, at 7. The BOP's own description of its document makes clear that the protocols are not mandatory, and the BOP even acknowledges that it may be impossible to establish or enforce mandatory uniform policies. Thus, this Court finds that the Plaintiff has failed to show that the BOP Guidance amounts to a mandatory course of action pursuant to statute, regulation, or policy. The Plaintiff's eighth objection is **OVERRULED**.

In his ninth objection, the Plaintiff objects to the magistrate's finding that the BOP employees engaged in a discretionary function in determining whether, when, and how to implement a quarantine. The Plaintiff also objects to the magistrate's finding that, under Fourth Circuit precedent, "decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials." Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002).

In support of his objection, the Plaintiff argues that all the events that occurred in FCI Gilmer occurred in the housing unit in general population, not quarantine. It appears to the Court that the Plaintiff has misunderstood the magistrate's use of the word quarantine. The magistrate was not referring to isolated solitary housing for inmates currently infected with COVID-19. Instead, the magistrate was referring to the larger institutional response to the COVID-19 pandemic and the new protocols imposed in response to the pandemic. Further, while the Plaintiff argues that <u>Veney</u> should not apply because it was decided before the onset of the COVID-19 pandemic, this Court finds that <u>Veney</u> remains good law. Therefore, the Plaintiff's ninth objection is **OVERRULED**.

Next, in his tenth objection, the Plaintiff again objects to the magistrate's finding that the language used in the BOP Guidance is discretionary. The Plaintiff cites at length the section of the R&R where the magistrate pinpoints examples of words and phrases that exemplify how the BOP Guidance consists of discretionary measures. The Plaintiff applies a different interpretation to the language used in the Guidance. In particular, the Plaintiff believes that the word "should" was used to communicate that the Guidance is mandatory. The Plaintiff again reiterates that his cellmate did not receive medical care in line with certain suggested protocols outlined in the Guidance. Therefore, the Plaintiff argues that the BOP employees were not performing a discretionary duty and instead violated mandatory policies.

As stated above, this Court has found that the BOP Guidance represents a discretionary set of recommendations for BOP employees to consider and abide by as they see fit. Further, this Court disagrees with the Plaintiff's definition of "should" as imposing a mandatory requirement. This Court affirms the magistrate's finding that the

16

use of the word "should" in the BOP Guidance implies discretion. In the context of the BOP Guidance, the Court finds the following definition of 'should' most accurate: "used to say or suggest that something is the proper, reasonable, or best thing to do."[1] Indeed, this matches the BOP Plan's stated objective to provide the best and most up-to-date recommendations for responding to COVID-19. Accordingly, the Plaintiff's tenth objection is **OVERRULED**.

The Plaintiff's eleventh objection once again argues that the BOP Guidance establishes a mandatory course of action. The Plaintiff cites again to the magistrate's analysis detailing the word and phrase choice found in the Guidance. The Plaintiff again reiterates that his cellmate did not receive medical care in line with certain suggested protocols outlined in the Guidance. Finding that the Plaintiff's eleventh objections is largely repetitive of his tenth objection, the Plaintiff's objection is **OVERRULED** for the reasons previously stated above.

Next, in his twelfth objection, the Plaintiff challenges the magistrate's application of the FCTA's quarantine exception. The Plaintiff objects to the magistrate's finding that the Defendant is immune from suit for any claim related to quarantine. In support, the Plaintiff explains that he arrived to FCI Gilmer on August 19, 2021, "after the BOP and nationwide COVID-19 quarantine officially ended." ECF No. 35 at 16. The Plaintiff cites no authority for his claim that quarantines ended before August 19, 2021, and the Court finds no support for this claim. Indeed, the BOP continued to update its COVID-19 Response Plan after August 2021, and the Plan includes quarantine procedures. The federal government did not declare an end to the COVID-19 public health emergency until

---

[1] *Should*, Britannica Dictionary, https://www.britannica.com/dictionary/should (last visited July 24, 2023).

17

2023. Therefore, the Court finds no support for the Plaintiff's argument against the application of the quarantine exception.

After making his quarantine argument, the Plaintiff once again dives back into his argument that the BOP Guidance related to aerosol generating procedures is a mandatory course of action. The Plaintiff contends that the language in the Guidance is mandatory, and the FCI Gilmer staff violated the FTCA by not following protocol. As elaborated upon above, this Court has found that the BOP Guidance, and the larger Response Plan, are discretionary. Accordingly, the Plaintiff's twelfth objection is **OVERRULED**.

In his thirteenth and final objection, the Plaintiff objects to the magistrate's finding that the Plaintiff failed to state a claim of medical negligence under West Virginia state law. The magistrate found that the Plaintiff failed to explain how his medical treatment fell below the applicable standard of care or how any of the actions or inactions of the BOP employees proximately caused him any injury. Once again, the Plaintiff refers this Court to the "mandatory" BOP Guidance and explains how his cellmate did not receive care as outline in the BOP Guidance. The Plaintiff argues that his cellmate's use of a CPAP machine caused his alleged injuries. The Plaintiff's final objection veers off from any specific point made by the magistrate and instead becomes a rehashing of claims raised in his complaint. Towards the end of his final objection, the Plaintiff introduces new information pertaining to his mental health and a BOP Program Statement about the treatment and care of inmates with mental illness.

Upon review of the magistrate's finding pertaining to the Plaintiff's claim of medical negligence, this Court similarly finds that the Plaintiff failed to establish the applicable

18

standard of care or how any BOP staff breached their duty of care. While the Plaintiff maintains that the BOP Guidance is mandatory, the Court emphasizes that the BOP describes its own Response Plan as a "framework" and the BOP "recognizes that pandemics can make ordinary or well-established standards difficult or impossible to achieve." BOP COVID-19 Pandemic Response Plan 4.0, Module 1, at 7. As previously found, the BOP Guidance, and the Response Plan as a whole, is not a mandatory course of action and does not represent an applicable standard of care for purposes of a medical negligence claim.

Applying a clear error review to the remainder of the Plaintiff's argument, the Court finds no error in the magistrate's finding that, of the forty-one injuries the Plaintiff alleges in his complaint, the Plaintiff proffered no evidence that those injuries resulted because of conduct of FCI Gilmer's employees. Indeed, two months after the Plaintiff contracted COVID-19, he denied having twenty of the symptoms he now alleges in this suit. Further, all the diagnoses that the Plaintiff raised in his second, third, fourth, and fifth objections and argued resulted from his bout with COVID-19 were contradicted by his own medical records. Ultimately, this Court affirms the magistrate's finding that even if any BOP staff member failed to implement the discretionary BOP Guidance, that failure does not satisfy the West Virginia state law requirement that a plaintiff's injury must result from a healthcare provider's failure to follow the accepted standard of care because the Plaintiff both failed to allege an applicable standard of care and failed to allege how any of the actions or inactions of the BOP employees proximately caused him any injury. Therefore, the Plaintiff's thirteenth objection is **OVERRULED**.

## IV. Conclusion

Accordingly, it is the opinion of this Court that Judge Trumble's Report and Recommendation [ECF No. 29] should be, and is hereby, **ORDERED ADOPTED.** For the reasons more fully stated in the R&R, the Court **ORDERS** that the Plaintiff's Complaint [ECF No.1] be **DISMISSED WITH PREJUDICE** as to all claims alleged to have occurred at FCI Williamsburg and **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction as to all other claims. The Court **FURTHER ORDERS** that the Defendant's Motion to Dismiss [ECF No. 15] be **GRANTED**. The Court **FURTHER ORDERS** that the Plaintiff's Motion for Judgment on the Pleadings [ECF No. 24] and Motions for Default Judgment [ECF Nos. 25, 26] be **DENIED**. Lastly, the Court **FURTHER ORDERS** that the Plaintiff's Motion for Leave to File Excess Pages [ECF No. 34] be **GRANTED** and his Objections [ECF No. 35] **OVERRULED**.

The Clerk of Court is **DIRECTED** to **STRIKE** this case from the Court's active docket. The Clerk is **FURTHER DIRECTED** to mail a copy of this Order to the Plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket sheet.

**DATED:** July 25, 2023

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE